IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M.A.B.,[1]

          Plaintiff,

v.                                                                        Case No. 22-1095-JWB

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION, *Kilolo Kijakazi, Acting
Commissioner*,

          Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income. The matter is fully briefed and is ripe for decision. (Docs. 9, 11, 12.) For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, and is satisfied by such evidence as a

---

[1] Plaintiff's initials are used to protect privacy interests.

reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational." *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. §

416.920(e), (f), (g).  At step four, the agency must determine whether the claimant can perform previous work.  If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis.  *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  *Thompson*, 987 F.2d at 1487 (citations omitted).

## II.  Background and Procedural History

Plaintiff alleges he was disabled as of March 13, 2019, due to conditions including degenerative disc disease, arthritis, and obesity.  (Doc. 1 at 2.)  His claims for disability insurance benefits and supplemental security income were administratively denied both initially and upon reconsideration, after which Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ").  (Tr. at 15.[2])  ALJ Scott Johnson conducted an evidentiary hearing by telephone (due to COVID-19) on October 28, 2021, during which the ALJ heard testimony from Plaintiff and from impartial vocational expert ("VE") Janie Hastert.[3]

Plaintiff testified, among other things, that he is 5'8" tall, weighs 320 pounds, and is married with two grown children and three grandchildren.  (Tr. at 39-40.)  He finished high school

---

[2] "Tr." refers to the Bates' page numbering in the administrative transcript. (Doc. 8.)
[3] Hastert also testified as the VE in a 2017 claim by Plaintiff. (Tr. at 60.)  Plaintiff had no objection to Hastert testifying in the instant case. (*Id.* at 61.)

3

and has a driver's license.  He has not worked since the alleged onset date.  In 2012–2014, he was an operations manager at a chemical company.  That job included doing paperwork and managing employees, as well as doing manual labor about fifty percent of the time, including lifting a maximum of about twenty pounds.  (*Id.* at 42–43.)  Between 2006 and 2011, Plaintiff owned his own mechanic shop where he worked on cars, trucks, and motorcycles.  He had up to eleven employees at one time and always had at least four employees.  (*Id.* at 44.)

Plaintiff testified he has lower back pain that comes and goes and that sitting or standing for any length of time, or twisting or bending, makes it worse.  He estimated he can stand for thirty minutes early in the day but the limit goes down to ten minutes later in the day.  He said he can walk a city block before needing to sit down.  He estimated he can sit for forty minutes at a time before he needs to stand up.  (*Id.* at 45–46.)  He estimated he can lift forty or fifty pounds but said doing so would hurt and that in an eight-hour day, he could only carry something very light on a repeated basis.  (*Id.* at 46.)  Plaintiff takes Tylenol, which he said does not really provide relief, and gabapentin, which was proscribed because he had trouble sleeping, and which does allow him to sleep.  Plaintiff said he had spinal injections on three occasions.  He said the first two injections provided relief but the last one did not.  (*Id.* at 46–47.)  He consulted a neurosurgeon who recommended pain management rather than surgery, which is why he had the injections.  Plaintiff said his pain radiates down to his knees and he also has pain in his hip.  He had a total knee replacement on his right side about nine years ago.  (*Id.* at 49.)  He does not currently take any medication for his knees.  Plaintiff has received treatment for psoriatic and/or rheumatoid arthritis, which he said affects his shoulder, hands, knees, and hips.  He takes Cosentyx, an immunosuppressant, but said it does not provide relief, and said he has swelling in his hands, knees, and ankles.  (*Id.* at 51.)

Plaintiff testified he is able to bathe and dress himself most of the time, although his wife sometimes has had to help him with his socks and shoes.  His wife does most of the cooking but he cooks simple meals once or twice a week.  (*Id.* at 53.)  Plaintiff does his own laundry and his wife's laundry every couple of weeks.  Plaintiff does the housecleaning, including sweeping the floors and dusting.   Other family members clean the bathrooms.   Plaintiff does general maintenance and minor repairs around the home.  He does not do yard work.  He usually does the grocery shopping, going by himself about once every two weeks.  Plaintiff sometimes "tinkers" on his own cars but does not work on cars for other people.  (*Id.* at 61.)

The ALJ issued a written opinion denying Plaintiff's claim for benefits on November 15, 2021.  (*Id.* at 12.)  The ALJ found at step one that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of March 13, 2019.  (*Id.* at 18.)  At step two, the ALJ found that Plaintiff has the following severe impairments: psoriatic arthritis versus inflammatory arthritis; degenerative disc disease of the lumbar spine; arthritis of the bilateral knees, status post right knee replacement; and obesity.  (*Id.*)  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the presumptively disabling impairments listed in the regulations.  (*Id.* at 20.)

The ALJ next found that Plaintiff has the RFC to perform light work as listed in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (*Id.* at 20.)  He found Plaintiff can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds; can frequently balance and stoop but can never kneel; can occasionally crouch but never crawl; can frequently reach and finger bilaterally; can occasionally tolerate exposure to extreme cold, heat, wetness, and humidity; and can occasionally tolerate exposure to vibration but must avoid all unusual hazards.  (*Id.* at 20–21.)

At step four, the ALJ found that Plaintiff was not disabled because he remained capable of performing his past relevant work as a stock supervisor and garage supervisor.  The ALJ found Plaintiff is able to perform the job of stock supervisor as generally performed and the job of garage supervisor both as generally performed and as actually performed by Plaintiff.  Based on the RFC noted above and the testimony of the VE, the ALJ concluded that Plaintiff's former positions did not require the performance of any work-related activities precluded by his RFC.  (*Id.* at 26.)  The ALJ proceeded to find, alternatively, that at step five Plaintiff was not disabled because there are other jobs in the national economy in significant numbers that a person with Plaintiff's RFC can perform.[4]  The ALJ concluded a person with Plaintiff's RFC could perform the requirements of the position of Merchandise Marker (Dictionary of Occupational Titles (DOT) No. 209.587-034; 150,000 jobs nationally); Routing Clerk (DOT No. 222.687-022; 74,000 jobs nationally); and Electrical Sub Assembler (DOT No. 729.684-054; 70,000 jobs nationally).  The ALJ accordingly concluded Plaintiff was not under a disability as defined by the Social Security Act from March 13, 2019, through the date of the decision.  (*Id.* at 28.)

### III.  Analysis

Plaintiff argues the ALJ erred by rendering an RFC without evaluating Plaintiff's limitations on a function-by function basis as required by Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996).  Specifically, Plaintiff contends the ALJ erred in failing to address Plaintiff's ability to stand or walk.  (Doc. 9 at 7.)  Plaintiff argues this was contrary to SSR 96-8p and *Southard v. Barnhart*, 72 F. App'x 781 (10th Cir. 2003), and that it requires remand because it erroneously led the ALJ to conclude Plaintiff could perform his past relevant work, despite

---

[4] The ALJ noted the step five analysis only applied from the alleged onset date until August 6, 2021, when Plaintiff turned 55.  (Tr. at 27.)  After that date, the finding of non-disability was based solely on the finding that Plaintiff was capable of performing past relevant work.  (*Id.*)

testimony from the VE that Plaintiff could not perform those jobs if he were limited to standing

and walking four hours per day.  (*Id.* at 9.)  Plaintiff further notes that the three medical opinions

in the record all found Plaintiff could stand or walk for four hours or less per workday.  (*Id.*)  Even

if the ALJ implicitly found Plaintiff could stand or walk for more than four hours, Plaintiff

contends any such finding was not supported by substantial evidence and must be reversed.  (*Id.*

at 15.)

The ALJ determined that Plaintiff "has the residual functional capacity to perform light

work as defined in 20 CFR 404.1567(b)…."  (*Id.* at 20.)  This regulation provides as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted may
> be very little, a job is in this category when it requires a good deal of walking or
> standing, or when it involves sitting most of the time with some pushing and pulling
> of arm or leg controls. To be considered capable of performing a full or wide range
> of light work, you must have the ability to do substantially all of these activities. If
> someone can do light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).  The full range of light work is understood to require "standing or

walking, on and off, for a total of approximately 6 hours of an 8-hour workday."  *See Sewell v.*

*Commissioner*, *SSA*, 2021 WL 3871888, *2 (10th Cir. Aug. 31, 2021) (citing SSR, 83-10, 1983

WL 31251, *6 (Jan. 1, 1983)).

It is true that the regulations direct the ALJ to assess a claimant's work-related abilities on

a function-by function basis – particularly at step four – because such findings can be critical the

outcome of a claim under various scenarios.  SSR 96-8P, 1996 WL 374184, *3–4.  Under the

particular facts of this case, however, there is no question that the ALJ's finding that Plaintiff could

perform light work as defined in the regulation was intended as a finding that Plaintiff could stand

or walk for six hours of an eight-hour day.  As an initial matter, the most reasonable inference of

the ALJ's finding that Plaintiff could "perform light work" as defined in the regulation is that the

ALJ intended it to mean that Plaintiff met the well-understood exertional requirements required for light work, including that Plaintiff could stand or walk for six hours.  *Cf. Sewell*, 2021 WL 3871888 at *2 (noting district court finding that "by virtue of SSR 83-10, this understanding of 'light work' has become so established and pervasive that the vocational expert can be presumed to have understood it when the ALJ propounded his hypothetical" of a person capable of performing a range of light work as defined in the regulation).  But any doubt in that regard is dispelled by the ALJ's hypotheticals and other findings, which make the conclusion inescapable that the ALJ determined Plaintiff could stand or walk for six hours a day.  At the hearing, the ALJ first asked the VE to assume an individual "able to do work at the light exertional level" with certain limitations.  (Tr. at 62.)  The VE opined that such a person could perform Plaintiff's past jobs as a stock supervisor and garage supervisor, as well as other specified jobs at the light level (merchandise marker, routing clerk, electrical assembler) in the national economy.  (*Id.* at 63.) The ALJ then posed a second hypothetical that assumed "rather than the strict definition of light in the DOT, … that this individual could … stand and walk for four hours of an eight-hour day," together with other limitations.  (*Id.* at 63–64.)  The VE opined that such a person could not perform Plaintiff's past work or the three jobs previously identified by the VE.  (*Id.* at 64.)   The VE then opined in response to further ALJ hypotheticals that the same individual could perform jobs in the national economy with transferable skills acquired from Plaintiff's prior jobs, and with minimal vocational readjustment, including three sedentary positions: production clerk (DOT 221.382-018; 109,000 positions nationally); personnel scheduler (DOT 215.367-014; 110,000 positions nationally); and invoice control clerk (DOT 214.382-014; 67,000 nationally).  (*Id.* at 65.) The ALJ ultimately concluded that Plaintiff has the RFC "to perform light work as defined" in the regulations and is capable of performing his past relevant work as a stock supervisor and garage

supervisor, noting the VE's testimony on that point.  (*Id.* at 26.)  In analyzing the evidence, the ALJ specifically found that the opinions of two consulting physicians "to reduce the claimant to 4 hours of standing and/or walking is inconsistent and unsupported by the record."  (*Id.* at 25.)  In so finding, the ALJ undoubtedly concluded that Plaintiff had the requisite ability to stand or walk embodied in the definition of light work – that is, for six hours of an eight-hour day.  The court thus rejects Plaintiff's argument that the ALJ erred by failing to make any specific finding concerning Plaintiff's ability to stand or walk.  *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense.... [W]e cannot insist on technical perfection.").

The court also concludes, for reasons discussed below, that the ALJ's determination was based on substantial evidence.  At the outset the court notes the applicable standard does not direct the court to inquire whether there was substantial evidence that might have supported a different conclusion.  In this instance, there clearly was such evidence, as Plaintiff's briefs ably point out.  Plaintiff's physician, Thomas J. Hamilton, D.O., opined that Plaintiff's physical limitations include an ability to stand for only five minutes at a time and for less than two hours of an eight-hour workday.  (Tr. at 516.)  Two non-examining state medical consultants (Drs. Hughes and Kindling) opined that Plaintiff's exertional limitations included an ability to stand or walk for four hours of an eight-hour day.  (*Id.* at 136, 165.)  These doctors cited Plaintiff's osteoarthritis in both knees, obesity, and chronic low back pain as factors supporting the limitation.  (*Id.* at 165.)

The ALJ specifically addressed each of these opinions.  The ALJ reviewed Dr. Hamilton's opinion in light of the entire record.  He noted Dr. Hamilton opined that Plaintiff could lift no more

than 10 pounds, could stand or walk less than 2 hours a day, could not perform any postural functions at all except balancing, that Plaintiff would need breaks, would need to elevate his legs, would be off-task 25% of the day, would miss more than four days of work per month, and was incapable of low stress work. (*Id.* at 25.)  The ALJ found these limitations "wholly unpersuasive." (*Id.*)  The ALJ found such "extreme" limitations were inconsistent with objective evidence, including Dr. Hamilton's own findings showing a normal range of motion with only low mid back pain radiating to the right leg, and edema noted on one occasion.  The ALJ also noted that diagnostic imaging in the record showed no abnormalities in the hips and only mild to moderate findings on an MRI of the lumbar spine.  As the ALJ noted, an x-ray of the hip and spine in February 2021 showed no advanced degenerative disc disease or advanced osteoarthritis.  The ALJ pointed out there was no record of treatment for Plaintiff's knees and cited evidence that surgery was not indicated for Plaintiff's condition.  Additionally, the ALJ found Dr. Hamilton's opinion to be inconsistent with Plaintiff's ability to perform a range of daily activities independently, as shown by functional reports and Plaintiff's testimony.  (*Id.* at 25.)  The ALJ found no support for Dr. Hamilton's opinions about such things as Plaintiff being off-task a significant part of the day and needing to miss work.  The ALJ also noted that although Plaintiff asserted that he was prescribed a cane for pain and balance, physical examination findings in the record showed Plaintiff was able to walk on multiple occasions without an assistive device, and Dr. Hamilton indicated Plaintiff did not need a cane despite the significant limitations he opined for Plaintiff. (*Id.* at 26.)

The ALJ also addressed and analyzed the opinions of the two non-examining consultants, which the ALJ found to be "partially persuasive."  (*Id.* at 25.)  The ALJ credited these doctors' experience and familiarity with the disability process, as well as their detailed narratives, and found

the record clearly supported some exertional and non-exertional limitations.  But the ALJ found the limitation to only 4 hours of standing or walking to be unsupported and inconsistent with the record, including evidence that although Plaintiff had a "wide-based gait" and slight reduction in range of motion in his lumbar spine, with positive straight leg raise tests, he otherwise "exhibited intact motor strength and sensation."  (*Id.*)  The ALJ also cited the fact that Plaintiff was able to engage in a range of daily activities, including going to the store weekly, cooking meals, driving, working on cars, and performing household chores.  These activities, which are shown by evidence in the record, tend to suggest a greater ability to stand and walk than was recognized by the consulting doctors, particularly when considered with a lack of objective test results or treatment history indicative of a greatly reduced ability to stand and walk.  The ALJ's opinion also discussed and considered Plaintiff's history of treatment, including recommended physical therapy that Plaintiff did not pursue, a several month delay before consulting a pain specialist, and an apparently incomplete regimen of steroid injections for pain relief.  (*Id.* at 23–24.)

The ALJ extensively reviewed Plaintiff's history of clinical findings and treatment.  (*Id.* at 22–24.)  He found that while Plaintiff "may indeed have ongoing pain and tenderness, and some limited range of motion in his lumbar spine, the pattern of clinical findings does not support his allegations of disability."  (*Id.* at 23.)  He noted that although Plaintiff's examinations frequently showed tenderness, Plaintiff also exhibited "intact motor and sensory function, preserved range of motion, and no need for assistive devices to ambulate…."  The ALJ also found "the level of treatment he has undergone for his severe impairments is not suggestive of him having disabling limitations."  (*Id.*)  All of these findings bore support in the records cited by the ALJ.  In sum, the ALJ reviewed all of the evidence, weighed it, and reached a conclusion with support in the record.

The threshold for "substantial evidence" is not high.  It is "more than a mere scintilla," but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154. A reasonable mind could accept the bases and evidence cited by the ALJ as adequate to support a conclusion that Plaintiff has the ability to stand or walk for six hours of an eight-hour day.

**IV.  Conclusion**

The decision of the Commissioner denying Plaintiff's application for benefits is AFFIRMED.  IT IS SO ORDERED this day 31st of January, 2023.

_____ s/ John W. Broomes _____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE